Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8459 | **DATE** | 12/4/2000 |
| **CASE TITLE** | LOUIS SHEPTIN vs. U.S.A., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants' motion to dismiss [53-1] is granted in part and denied in part. Plaintiff's claims against Dr. Javed and Dr. Cruz as individuals are dismissed, as are the claims against the United States that were not raised in plaintiff's administrative claim. Defendant's motion is otherwise denied. Plaintiff's's motion for leave to supplement his response to the motion to dismiss[92-1] is granted. Plaintiff's motion for temporary restraining order[70-1] is denied for the reasons stated in the Court's September 1, 2000 order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 05 2000 | |
| ✓ | Docketing to mail notices. | | | 95 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING '00 DEC -4 PM 3:20 | | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LOUIS SHEPTIN, )
)
Plaintiff, )
)
vs. ) Case No. 99 C 8459
)
UNITED STATES OF AMERICA, )
DR. M. JAVED, and DR. CRUZ, )
)
Defendants. )

DOCKETED
DEC 0 5 2000

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

*Pro se* plaintiff Louis Sheptin, an inmate in the Federal Bureau of Prisons, has asserted a claim against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1) & 2674, and a claim under *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1981), against two staff physicians at the BOP's Chicago Metropolitan Correctional Center, both concerning his medical care during his incarceration. The United States has moved to dismiss the FTCA claim on the grounds that it is barred by the statute of limitations; the staff physicians, doctors Javed and Cruz, have moved to dismiss the *Bivens* claim for failure to exhaust administrative remedies as provided in the Prison Litigation Reform Act, 28 U.S.C. §1997e(a).[1]

### Facts

On September 6, 1999, Sheptin filled out and submitted to the BOP a standard claim form entitled "Claim for Damage, Injury, or Death." He contended that on August 19, 1999, he

---

[1] Mr. Sheptin is nothing if not persistent; he has filed no less than nine memoranda addressing the FTCA and exhaustion issues.

was given a copy of his BOP medical records dating back to 1983 and upon examining them learned that since 1984 testing had shown, and BOP medical staff had known, that he had a serious liver ailment, specifically chronic active hepatitis. Sheptin claimed that he was not told the results of these tests or that he had an infectious liver disease and that he was never referred to a specialist who treats liver disorders, but rather was told only that he had a seizure disorder, heart problems, and a "lipid problem." Sheptin further stated that his medical records had revealed that in 1990 and 1993, tests showed that he was infected with the hepatitis C virus but that he did not learn this until February 1998.

In his claim, Sheptin alleged that the BOP's non-disclosure that he had hepatitis and its failure to refer him to a liver specialist constituted gross negligence, caused his condition to worsen, caused portal fibrosis of his liver, and "took years from [his] life and caused [him] a spectrum of other ailments which went unattended and worsened as a result of this negligence and malpractice." Sheptin further alleged that although the BOP was advised by a gastroenterologist in May 1998 that he required treatment for hepatitis C, treatment was unreasonably delayed, and that at various times during his incarceration he was given prescription drugs "directly contraindicated for those persons with active liver disease," which further damaged his liver.

Sheptin also asserted that BOP medical personnel had improperly treated his heart condition. He stated that though the BOP knew as early as 1994 that he had evidence of coronary artery disease, he was prescribed a drug that posed a potential risk of causing coronary artery spasms, and BOP medical staff failed to monitor him during the period that he was taking the drug. He alleged that this caused damage to his heart, requiring an angioplasty in July 1999.

Sheptin further claimed that a doctor had recommended the insertion of an angiocath in June 1998 but that this was not done until over a year later, resulting in additional damage to his heart. Finally, Sheptin alleged that during 1998 and 1999, BOP medical staff ignored his symptoms of heart disease, which led to further unnecessary pain and suffering.

The BOP denied Sheptin's claim on February 11, 2000, stating that "[i]nvestigation of your claim did not reveal that you suffered any personal injury as a result of the negligent acts or omission of Bureau of Prisons employees acting within the scope of their employment."

Sheptin filed this lawsuit in December 1999, originally styling it as a habeas corpus action and naming as defendant the warden of the MCC. On March 3, 2000, the Court concluded that habeas corpus was not an appropriate remedy for what Sheptin was claiming and determined that his claims could be construed as asserting violations of his Eighth Amendment rights. The Court directed Sheptin to file an amended complaint using the form ordinarily required for prisoners asserting civil rights claims. On March 20, Sheptin filed an amended complaint, asserting, as previously indicated, a FTCA claim against the United States and a *Bivens* claim against doctors Javed and Cruz. Based on the amended complaint's allegations, it appears that Sheptin alleges that Javed and Cruz were among the doctors who he claims negligently treated him for his heart condition, misprescribed drugs contraindicted for persons with liver disease, and delayed treating him for hepatitis C, all during the 1998-99 period. *See* Am. Cplt., pp. 6-7.

## Discussion

1. **FTCA claim**

    a. **Scope of claim**

    The FTCA provides that "[a]n action shall not be instituted upon a claim against the

3

United States for money damages ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. §2675(a). The government argues that Sheptin's amended complaint asserts claims beyond those contained in the claim he presented to the BOP. Specifically, it argues that the complaint includes the following claims that were not mentioned in Sheptin's administrative claim: failure to treat him for a seizure disorder; harassment by prison employees; filing of a false incident report by BOP officials; failure to treat him for ailments resulting from a hunger strike; failure to comply with a subpoena; failure to give him dentures; and withholding medication. *See* Govt. Mem. at 7-8. The government argues that any such claims must be dismissed.

Section 2675(a) is designed to provide a procedure under which the agency may investigate, evaluate, and consider settlement of a claim. Thus the notice of claim must "provide sufficient information both to permit an investigation and to estimate the claim's worth." *Barnett v. Okeechobee Hospital,* 98 F. Supp. 2d 1374, 1377 (S.D. Fla. 2000). This does not mean, however, that "the validity of a judicial complaint under the FTCA depends on it having been cloned from its predecessor, the administrative claim." *Drew v. United States,* 217 F.3d 193, 197 (4th Cir. 2000). Rather, "the proper focus is on whether the administrative claim affords the Government with adequate notice to properly investigate the underlying incident so that it may either reasonably assess its liability or competently defend itself." *Id.*

A claimant is not required to provide the agency with a preview of his lawsuit by reciting every possible theory of recovery or every factual detail that might be relevant. A claim can put an agency on notice of facts it should discover during its investigation of the claim. *Burchfield*

4

*v. United States*, 168 F.3d 1252, 1255 (11th Cir. 1999).  But the claim "'must do more than cause the government to sift through the record.  Rather, notice must be sufficiently detailed so that the United States can evaluate its exposure as far as liability is concerned.  Therefore, in addition to requiring a sum certain, a claimant must provide a sufficient factual predicate so that his claim can be investigated.'"  *Drew*, 217 F.3d at 198 (quoting *Richland-Lexington Airport District v. Atlas Properties, Inc.*, 854 F. Supp. 400, 412 (D.S.C.1994)) (internal quotations omitted).

None of the allegations listed above involves the types of things that the BOP would be expected to uncover in investigating Sheptin's claim involving his medical care for his liver and heart conditions.  They involve ailments, injuries, and types of alleged misconduct that differ significantly from the matters that were included in the administrative claim.  Sheptin may not seek damages in this case based upon any of these alleged wrongs.[2]

b.     **Statute of limitations**

The FTCA requires a tort claimant to present a claim to the appropriate federal agency within two years after the claim accrues and to file suit within six months after the date of the agency's notice of denial of the claim.  28 U.S.C. §2401(b).  Sheptin's complaint and his administrative claim include allegations dating back to 1983.  The government argues that any claim for acts or omissions that took place prior to September 6, 1997, two years before Sheptin submitted his claim to the BOP, is time-barred as a matter of law.

---

[2] However, Sheptin's failure to specifically identify doctors Javed and Cruz in his administrative claim does not bar him from asserting in his FTCA claim that their actions were negligent, or from seeking damages based upon their actions.  Doctors Javed and Cruz appear to have been among the physicians who treated Sheptin for his liver and heart conditions in 1998-99; Sheptin's administrative claim clearly spelled out his contention that his treatment for those conditions during those years was negligent and caused him injury.

5

The Court disagrees. In his complaint, Sheptin alleges that he did not even discover that he had liver disease until February 1998; he alleges that it was not until August 1999 (when he obtained his medical records) that he learned that BOP medical staff had known this some fifteen years earlier and had failed to treat him for the condition and prescribed medications contraindicated for persons with liver disease. With regard to his heart condition, Sheptin alleges that though he knew he had heart disease, it was not until he received his medical records in August 1999 that he learned that certain treatments had been suggested as early as 1998 but had been delayed.

Under the FTCA, a plaintiff's claim does not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should discover, his injury and its cause. *See United States v. Kubrick*, 444 U.S. 111, 122 (1979); *Jastremski v. United States*, 737 F.2d 666, 669 (7th Cir. 1984); *Stoleson v. United States*, 629 F.2d 1265, 1269 (7th Cir. 1980). Sheptin's injury, for purposes of his FTCA claim, consists of the alleged aggravation of his conditions during the period of non-treatment or improper treatment. Sheptin says that he did not even know that he had a liver ailment until February 1998 because this was concealed from him by BOP medical personnel. Nothing in the current record indicates that he should have known of his liver ailment earlier or, more importantly, that he should have known that the ailment that he did not even know existed was getting worse. In short, Sheptin first learned of the alleged injury to his liver within the period of limitations. The government argues that Sheptin could have sought his medical records sooner, but it cites no authority for the proposition that his failure to do so renders his claim time-barred – particularly in a case in which the plaintiff alleges that his doctors, who ordinarily would be expected to advise him of his medical condition, never did so.

Indeed, the government's argument is directly contrary to *Nemmers v. United States*, 795 F.2d 628 (7th Cir. 1986), a FTCA case in which the court said that "the statute of limitations should not be construed to compel everyone who knows of an injury to scour his medical records just in case the government's physician did something wrong ...." *Id.* at 631, citing *Drazan v. United States*, 762 F.2d 56, 59 (7th Cir. 1985).

With regard to his heart condition, Sheptin was aware more than two years before he made his administrative claim that he had heart disease. However, the alleged injury to his heart for which he sues in this case consists of the alleged deterioration of his condition in 1998-99 at the hands of BOP medical personnel. This injury occurred well within the period of limitations.

Finally, with regard to both his liver and heart conditions, there is nothing in the current record that indicates Sheptin had any reason to be aware that the reason he was deteriorating was the quality of the medical care he was receiving from the BOP. *Kubrick* holds that a plaintiff need not know that his injury was the result of actionable conduct – i.e. negligence – in order to start the two year clock, but he still has to be aware that the cause of his injury was something in his medical care, as opposed to "natural" causes or some other external cause, before the statute begins to run. *See Jastremski*, 737 F.2d at 669-70 (parents' knowledge that son had problems with walking was not enough to alert them that this was due to brain damage which might have been linked to the circumstances of his birth); *Svoboda v. United States*, No. 84 C 2926, 1985 WL 682, at *1 (N.D. Ill. Apr. 22, 1985) (Kocoras, J.) (claim regarding neurological problems allegedly from swine flu vaccine accrued when plaintiff "knew or should have known that her neurological problems might be related to her swine flu vaccination."). *Cf. Stoleson*, 629 F.2d at 1270 (layperson's subjective "suspicion" that her heart disease was caused by nitroglycerin

7

exposure from work at a government ammunition plant was not enough to trigger the statute of limitations, because medical evidence of a causal connection was lacking). *See generally Nemmers,* 795 F.2d at 631-32. On the present record, we cannot say that Sheptin had any reason to believe, more than two years before he filed his claim, that his medical treatment or lack thereof was what was causing his condition to deteriorate (assuming he even knew it was deteriorating).

### 2. *Bivens* claim

We deal finally with Sheptin's *Bivens* claim against doctors Javed and Cruz. Defendants contend that Sheptin has not exhausted his administrative remedies with regard to these claims, as required by the PLRA. *See* 42 U.S.C. §1997e(a). Sheptin does not dispute that he did not pursue the internal BOP grievance procedure available to prisoners; rather his argument is that he was not required to do so.

Sheptin's primary argument is that he is seeking damages and the BOP's grievance procedure for prisoners does not provide such a remedy. He is right about the nature of the grievance procedure; not only does it not provide for damages, it specifically *excepts* such claims. BOP regulations provide that inmate grievances "will not be accepted under the Administrative Remedy Program for claims for which other administrative procedures have been established, including tort claims ...." 28 C.F.R. §542.12(b).

Unfortunately for Sheptin, the Seventh Circuit has squarely rejected his argument; in this Circuit, the unavailability of damages in internal prison grievance procedures does not excuse a prisoner from the PLRA's exhaustion requirement. *See Perez v. Wisconsin Department of Corrections,* 182 F.3d 532, 534 (7th Cir. 1999); *Massey v. Helman,* 196 F.3d 727, 734 (7th Cir.

8

1999). *Perez*, which like this case involved a claim for denial of medical care, is illustrative. Perez had suffered a back injury; a doctor at the prison where he had previously been incarcerated recommended surgery, but a doctor at the prison where he was incarcerated at the time of suit prescribed medication and therapy rather than surgery. Perez sued, claiming that the denial of surgery constituted cruel and unusual punishment. He had not, however, filed and pursued a prison grievance concerning his complaint. He argued, as does Sheptin, that the prison grievance procedure could not provide him with the remedy he was seeking, namely money damages. The Seventh Circuit rejected this argument, saying that "[a]dministrative remedies can help even when the prisoner wants damages.... Wisconsin might decide, in response to an administrative request, to change his medical regimen; it might even decide to authorize the surgical intervention Perez tells us he prefers." *Id.* at 537. This could have, among other things, affected Perez's damage recovery by terminating the accrual of further damages. *Id.* at 537-38. The court therefore directed the dismissal of Perez's claim. *Id.* at 538. It did, however, indicate a potential exception to the rule of exhaustion: "[i]t is possible to imagine cases in which the harm is done and no further administrative action could supply any 'remedy.' ... Suppose the prisoner breaks his leg and claims delay in setting the bone is cruel and unusual punishment. If the injury has healed by the time suit begins, nothing other than damages could be a 'remedy,' and if the administrative process cannot provide compensation then there is no administrative remedy to exhaust." *Id.*

*Perez's* exception does not apply here. Sheptin claims to suffer from chronic conditions, and thus changes to his medical care might well have an effect both on his future health and on the amount of his ultimate recovery of damages in this case. Sheptin himself clearly believes this

9

is so; he appears to have instituted lawsuits in other districts in which he seeks what he claims are improvements in his medical treatment. Likewise, Sheptin has filed in the present case a series of motions for injunctive relief seeking to alter the course of his medical care in some significant respect. In short, if Perez's Eighth Amendment claim was barred by the PLRA, so is Sheptin's. *See also Massey,* 196 F.3d at 734 (prisoner whose hernia had been surgically repaired but whose physical ailment lingered after he filed suit was required to exhaust administrative remedies).

Sheptin also argues that he was not required to exhaust internal BOP remedies because he was and is in danger of imminent harm, but we are unaware of any authority excusing prisoners from the PLRA's exhaustion requirement in such situations. Just as there is no "futility" exception to the exhaustion requirement, *see Perez,* 182 F.3d at 537, there is no basis to create an "imminent harm" exception that Congress did not see fit to include.[3]

For these reasons, the Court grants the motion to dismiss filed by doctors Javed and Cruz.

## C.    Appointment of counsel

The Court intends to appoint counsel forthwith to represent plaintiff. In this regard, however, the Court wants to make two things perfectly clear to Mr. Sheptin. First, once counsel is appointed the Court will no longer accept any *pro se* filings from Mr. Sheptin in this case; that is what counsel is for. Second, the Court is appointing counsel to act for Mr. Sheptin in this case and in this case only -- that is, in connection with Sheptin's FTCA claim in this case for damages

---

[3] Congress did create an "imminent danger" exception to the PLRA's "three strikes" rule, *see* 42 U.S.C. §1915(g), indicating that it knew how to create such an exception when it wished to do so.

10

for medical malpractice.[4] Appointed counsel will have no obligation to represent Mr. Sheptin in any other case or even to advise him with regard to any claims that he has or may have against the BOP, its employees and officials, or anyone else, aside from the present case. The Court expects to enter an order appointing counsel within the next seven days.

## Conclusion

For the foregoing reasons, defendants' motion to dismiss [53-1] is granted in part and denied in part. Plaintiff's claims against Dr. Javed and Dr. Cruz as individuals are dismissed, as are the claims against the United States that were not raised in plaintiff's administrative claim. Defendant's motion is otherwise denied. Plaintiff's motion for leave to supplement his response to the motion to dismiss [92-1] is granted. Plaintiff's motion for temporary restraining order [70-1] is denied for the reasons stated in the Court's September 1, 2000 order.

MATTHEW F. KENNELLY
United States District Judge

Date: December 4, 2000

---

[4] As the Court has previously held, injunctive relief is not available in a FTCA case. *See Sheptin v. United States*, No. 99 C 8459, 2000 WL 1269360, at *2 (N.D. Ill. Sept. 1, 2000). Thus appointed counsel will not be expected to bring motions for injunctive relief in this case or in any of Mr. Sheptin's other cases.

11